**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
**CASE NO:**

**MARLENE ALFONSO,**
**an Individual,**

**Plaintiff,**

**v.**

**GRANDE AIRE SERVICES, LLC,**
**a Florida Limited Liability Company,**

**Defendant.**

_______________________________________/

**COMPLAINT & DEMAND FOR A JURY TRIAL**
**WITH INJUNCTIVE AND DECLARATORY RELIEF REQUESTED**

Plaintiff, **MARLENE ALFONSO** ("Plaintiff"), by and through her undersigned counsel, files this Complaint against **GRANDE AIRE SERVICES, LLC** ("Defendant"), and alleges as follows:

1. Plaintiff brings this action for sex/gender discrimination against Defendant in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

2. Plaintiff is seeking damages including back pay, front pay, punitive damages, compensatory damages, injunctive and declaratory relief, and her attorneys' fees and costs.

**PARTIES, JURISDICTION AND VENUE**

3. Plaintiff is an adult individual.

4. Defendant is a Florida Limited Liability Company that operates and conducts business in Lee County, Florida, and is therefore, within the jurisdiction of this Court.

5. At all times material hereto, Plaintiff worked for Defendant in Lee County, Florida.

6. Venue is proper because Defendant is located in Lee County, Florida, and Plaintiff worked for Defendant in Lee County, Florida, where the actions at issue took place.

7. This Court has original jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, as they arise under federal law.

8. Plaintiff is protected by Title VII because she is a woman who suffered discrimination based on her sex/gender.

9. Plaintiff is protected by Title VII because she suffered an adverse employment action due to her objections to the gender/sex based discrimination she was receiving from Defendant.

10. Defendant was at all material times an "employer" as defined by Title VII as it employed in excess of fifteen (15) employees.

**CONDITIONS PRECEDENT**

11. On or about July 22, 2026, Plaintiff timely dual-filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR") and

the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex/gender against Defendant.

12. On or about July 31, 2026, Plaintiff received a Notice of Right to Sue from the EEOC, giving Plaintiff the right to bring a civil action on her federal discrimination claims within ninety (90) days upon her receipt of same.

13. Plaintiff timely files this action within the applicable period of limitations against Defendant and has complied with all administrative prerequisites.

14. All conditions precedent to this action have been satisfied and/or waived.

## **STATEMENT OF FACTS**

15. Plaintiff worked for Defendant as an HVAC Maintenance Technician from April 23, 2024, until her termination on or around December 31, 2025.

16. During Plaintiff's interview and hiring process, Maintenance Department Manager Daniel Martin ("Danny") represented that Defendant would provide paid training and company-paid schooling after approximately one year and that Plaintiff would gain experience through service calls.

17. Plaintiff excelled throughout her tenure, and even trained other technicians, including Jacoby, Eric, and Danny's brother, Kris Martin.

18. Plaintiff received five-star customer reviews, and Lead Technician Trevor described her as one of Defendant's top technicians.

19. During Plaintiff's first year, male technicians with similar or less hands-on experience received service-call assignments while Plaintiff did not.

20. In approximately February and March 2025, Jacoby and Eric were sent on service calls after Plaintiff had trained them approximately two to three months earlier.

21. When Plaintiff asked Danny why those technicians were receiving service calls, Danny claimed that they had more experience, an absurd claim considering Plaintiff was the one who trained them.

22. Plaintiff initially believed that her own training responsibilities explained the lack of service calls; however, male trainees routinely accompanied male technicians on service calls, and training did not prevent those men from receiving those opportunities.

23. In approximately June 2025, after more than one year of employment, Plaintiff requested the company-paid schooling promised by Defendant when Plaintiff was hired.

24. Danny discouraged her by discussing the tuition she would have to repay if she failed and downplaying the value of trade school.

25. On July 25, 2025, Plaintiff met with Danny about schooling. Danny stated that school "didn't mean anything" and that it was better to "learn on the job," and assured Plaintiff that she would receive service calls even without schooling.

26. During the summer and fall of 2025, Danny repeatedly criticized Plaintiff's manner of walking and speaking, called her "ghetto," told her to "be more cordial," and directed her to look up videos on how to "be a princess."

27. These comments reflected Danny's view that Plaintiff was not behaving femininely enough.

28. Defendant offered inconsistent explanations for withholding schooling.

29. Danny said another technician was already attending and there was no available spot, repeated that school did not mean anything, and, during a mid-August department meeting, told Plaintiff, "I thought you didn't want to go."

30. On September 8, 2025, Plaintiff again requested an explanation for the denial of schooling.

31. Danny then assigned her a service call, but Plaintiff received no further service call opportunities.

32. By September 25, 2025, Defendant regularly sent Plaintiff home early, reducing her work hours and earnings, while continuing to give male technicians service calls and longer workdays.

33. On November 21, 2025, Danny attributed the denial of schooling to Plaintiff's supposed "attitude."

34. That day, Plaintiff complained to General Manager Matthew Goodnight ("Mr. Goodnight") that Danny was treating her differently because she

was a woman and that Defendant's conduct constituted unlawful sex discrimination.

35. Plaintiff received no further response from Goodnight.

36. On or about December 9, 2025, after her discrimination complaint, Defendant issued Plaintiff a written warning and suspended her for three days.

37. During the week of December 15, 2025, Defendant hired a new technician despite describing work as slow and repeatedly sending Plaintiff home around noon to 2:00 p.m.

38. Plaintiff learned that Trevor continued working until approximately 5:00 or 6:00 p.m. and received service calls.

39. In December, Defendant accused Plaintiff of insubordination for failing to call her dispatcher after completing her assignments before proceeding to her next assignment.

40. Plaintiff had informed the team, including Lead Technician Trevor, that she was proceeding to the next call, consistent with the usual practice.

41. The asserted dispatcher-notification rule had not been communicated to Plaintiff, and Trevor was unaware of this requirement.

42. On December 31, 2025, Danny informed Plaintiff that Defendant was terminating her employment, effective immediately.

43. Danny claimed that Plaintiff had a "negative attitude."

44. Defendant replaced Plaintiff with a male technician who had less skill

and experience.

45. Plaintiff also observed that another employee was retained after urinating on a roof, showing that Defendant's alleged concern about her attitude and conduct did not reflect a consistently applied disciplinary standard.

46. It is clear that Defendant discriminated against Plaintiff based on the fact that she is a woman, and terminated Plaintiff's employment in retaliation for her objections to the sex discrimination.

47. Plaintiff's termination was for pretextual and discriminatory reasons.

48. By reason of the foregoing, Defendant's actions affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by Title VII.

49. At all times material hereto, Plaintiff was ready, willing, and able to perform her job duties.

50. Defendant did not have a legitimate, non-discriminatory rationale for the unequal treatment suffered by Plaintiff.

51. Defendant did not have a legitimate, non-discriminatory reason for Plaintiff's termination.

52. Title VII prohibits discrimination because of sex, including discrimination based on sex stereotypes.

53. Defendant treated Plaintiff less favorably than male technicians in training, assignments, hours, and continued employment because she is a woman

and did not conform to Defendant's expectations of "feminine" behavior.

54. As a result of Defendant's unlawful treatment and termination of her employment, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, and mental anguish.

55. Any reason provided by Defendant for its adverse employment action(s) against Plaintiff is a pretext and a cover-up for illegal discrimination.

56. Plaintiff's mistreatment and termination constitute adverse actions as defined by Title VII.

57. Plaintiff suffered adverse employment actions because of her sex/gender and her objections to disparate treatment.

58. Plaintiff has suffered damages as a result of Defendant's discrimination and termination of her employment.

59. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent her in the litigation, and has agreed to pay the firm a reasonable fee for its services.

**COUNT I: SEX/GENDER DISCRIMINATION UNDER TITLE VII**
**DISPARATE TREATMENT**

60. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 8, and 10 through 59, above.

61. The acts of Defendant, by and through its agents and employees, violated Plaintiff's right to be free from discrimination because of sex under Title

VII, 42 U.S.C. § 2000e-2(a).

62. Defendant treated Plaintiff less favorably than similarly situated male technicians, denied her employment opportunities, reduced her hours, suspended her, and terminated her employment because of her sex/gender, including her failure to conform to sex-based stereotypes.

63. Plaintiff's sex was a motivating factor in Defendant's adverse employment decisions.

64. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

65. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

66. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

67. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against

Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed just and proper by this Court.

## **COUNT II: RETALIATION IN VIOLATION OF TITLE VII**

68. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 7, and 9 through 59, above.

69. Plaintiff was terminated within close temporal proximity of her objections to discrimination and disparate treatment based on gender/sex.

70. Plaintiff's objections to discrimination constituted protected activity under Title VII.

71. Plaintiff was terminated as a direct result of her objections to disparate treatment based on sex/gender.

72. Plaintiff's protected activity, and her termination, are causally related.

73. Defendant's stated reasons for Plaintiff's termination are a pretext.

74. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

75. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

76. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

77. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed just and proper by this Court.

***(REMAINDER of page left intentionally blank)***

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 28th day of October, 2026.

Respectfully submitted,

***/s/ Nicholas Vimo***

Nicholas Vimo
Florida Bar No. 1029436
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: nicholas@floridaovertimelawyer.com

*Attorney for Plaintiff*